**In re The ORTHOTIC CENTER, INC., et al., Debtors.**

**NEW YORK THERAPEUTIC TECHNOLOGIES, INC., et al., Plaintiffs–Appellees,**

v.

**Donna SHALALA, Secretary of the United States Department of Health and Human Services, et al., Defendants–Appellants.**

No. 1:95CV1560.

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 30, 1996.

---

Richard J. French, Arthur I. Harris, Office Of The U.S. Attorney, Cleveland, OH, for appellant.

Robert S. Balantzow, David A. Schaefer, Thomas W. Ostrowski, McCarthy, Lebit, Crystal & Haiman, Cleveland, OH, for appellees.

## MEMORANDUM OF OPINION AND ORDER

MATIA, District Judge.

This is an appeal from an order of the bankruptcy court entered in Bankruptcy Case No. 95–11675. After examination of the briefs and record, this Court determines that oral argument is not needed. Bankr. Rule 8012, 11 U.S.C.

The bankruptcy court determined that the Secretary of Health and Human Services ("Secretary" or "HHS") was in violation of the automatic stay when she suspended Medicare reimbursement to the debtors on the ground of suspected fraud. The reimbursement suspensions against two of the debtors occurred on December 16, 1994, and March 30, 1995. On April 13, 1995, the Secretary (through one of her carriers) notified both debtors that all of the claims they had billed were not covered under Medicare and that they had been overpaid in excess of $2,000,000, which was required to be repaid.

The very next day, April 14, 1995, the debtors commenced a Chapter 11 proceeding, and they subsequently filed a motion for a determination that the Secretary was in violation of the automatic stay. More than a month after the commencement of the Chapter 11 proceeding, the Secretary suspended reimbursement to the other debtors in this case, also on the ground of fraud.

■ The bankruptcy court orally ruled that the Secretary was in violation of the automatic stay and ordered her to turn over Medicare reimbursement amounts that were suspended and owing to the debtors. In its written decision and judgment issued a few days later, the bankruptcy court limited its ruling to the suspension of payments which had accrued postpetition. (That part of its ruling is the subject of an appeal by the debtors which is currently pending before another judge of this court.) The rulings of the bankruptcy court on questions of law are subject to *de novo* review, while any factual findings are reviewed under the "clearly erroneous" standard. *Trident Assoc. Ltd. Partnership v. Metropolitan Life Ins. Co.*, 52 F.3d 127, 130 (6th Cir.1995); *Michigan Assn. of Indept. Clinical Labs. v. Shalala*, 52 F.3d 1340, 1346 (6th Cir.1994); *In re Batie*, 995 F.2d 85 (6th Cir.1993). Since the issue presented in this appeal is one of law, the review will be on a *de novo* basis.

The automatic stay provision of the bankruptcy code is found in 11 U.S.C. § 362(a), which provides as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 [citation omitted], operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of

process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

However, there are exceptions to the automatic stay which are found in § 362(b) (only two of which are relevant to this appeal):

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970 [citation omitted], does not operate as a stay—

\* \* \* \* \* \*

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental

unit to enforce such governmental unit's police or regulatory power;

\* \* \* \* \* \*

The narrow issue in this appeal is the following: Does the Secretary's suspension of Medicare reimbursement payments come within the automatic stay exception for a governmental unit's police or regulatory power? The bankruptcy court held that it did not. I respectfully disagree.

The decision of the bankruptcy court relied in great part on *In re Medicar Ambulance Co., Inc.*, 166 B.R. 918 (Bkrtcy.N.D.Cal.1994). However, there is an important factual difference between *Medicar* and this case: in *Medicar*, HHS conceded that the suspended payments were property of the estate. HHS makes no such concession in this case. To the extent that that difference does not support a different result in this case, this court declines to follow *Medicar*.

In the instant case, the Secretary's suspension of payments was *not* equivalent to the seizure of property of the estate because the right to receive payments is in dispute, and the payments are not the property of the debtor until the dispute is decided in its favor. As the court said in *U.S. v. Inslaw, Inc.*, 932 F.2d 1467 (D.C.Cir.1991), "It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute." (p. 1472) (Citations omitted.)

This Court further disagrees with the *Medicar* court's interpretation of the public policy test (p. 926). That court said:

The public policy test distinguishes between proceedings that effectuate public policy and those that adjudicate private rights. Only the former are exempted from the automatic stay [Citations omitted.] A governmental unit cannot escape the automatic stay by adjudicating the private rights of its citizens under the guise of public protection. [Citations omitted.] In applying the public policy test a court must determine whether the action is an attempt to prevent future violations of the law rather than an attempt to determine the liability of private parties.

The *Medicar* court then gives the example of an action to revoke a contractor's license as opposed to attempts to collect monies owed to persons harmed by the same incidents which led to the revocation proceedings. But the contractor example is simply not analogous to action by HHS to prevent the illegal expenditure of the public's tax money in payment of fraudulent Medicare claims. Protection of public funds is not analogous to the collection of monies owed to individual victims of a fraudulent contractor.

It is not difficult to imagine what could happen if the debtors' position were sustained. Congress's desire to protect the integrity of the Medicare program could be completely frustrated, leading to the loss of substantial amounts of taxpayer funds because of the government's inability to prevent the payment of fraudulent claims. The policy behind the police or regulatory exception to the automatic stay is to prevent the bankruptcy court from becoming a haven for wrongdoers. *Commodity Futures Trading Comm. v. Co Petro Marketing,* 700 F.2d 1279, 1283 (9th Cir.1983); *In re Commerce Oil Co.,* 847 F.2d 291, 297 (6th Cir.1988).

The Secretary has alleged two additional errors by the bankruptcy court: premature ruling on the debtors' motion and lack of subject matter jurisdiction. This Court finds that the bankruptcy court did not err procedurally in ruling on the debtors' motion. The issues were fully briefed, and the Secretary's rights were not curtailed in any way. With respect to the issue of subject matter jurisdiction, this Court agrees with the Secretary that the bankruptcy court does not have jurisdiction over Medicare disputes. This Court agrees with and adopts the reasons therefor set forth in the Brief for Defendant–Appellant Secretary.

For the reasons stated, this Court reverses the order of the bankruptcy court finding that the Secretary was in violation of the automatic stay and directing her to turn over Medicare reimbursement amounts that were suspended. This case is remanded to the bankruptcy court for further proceedings.

IT IS SO ORDERED.

*ORDER OF REMAND*

This Court, having issued its Memorandum of Opinion and Order, hereby remands the above-captioned case to the bankruptcy court for further proceedings.

IT IS SO ORDERED.